IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AARON DILLARD                                                                                                PLAINTIFF
ADC # 131975

v.                                          4:22CV01134-JTK

ARKANSAS DEPARTMENT OF
CORRECTION, et al.                                                                                       DEFENDANTS

**ORDER**

Aaron Dillard ("Plaintiff") is currently incarcerated at the Varner Unit of the Arkansas Division of Correction ("ADC").  His claims in this case arise from the time he was in custody in the Brickey's Unit of the ADC.  Plaintiff sued multiple Defendants alleging violations of his constitutional rights.  (Doc. Nos. 2, 5).  Plaintiff's claims against the Doe Defendants and the Arkansas Department of Correction have been dismissed, as have Plaintiff's official capacity claims.  (Doc. Nos. 9, 14).  Plaintiff's excessive force claims against Defendants Stephen Lane and Roosevelt Barden (collectively, "Defendants") remain pending.

Defendants have filed a Motion for Summary Judgment on the merits of Plaintiff's claim, Brief in Support, and Statement of Facts. (Doc. Nos. 51-53).

On February 1, 2024, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by March 4, 2024.   (Doc. No. 54).   The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute.   (Id.)

Plaintiff filed his Response on March 1, 2024.   (Doc. No. 57).   Defendants did not file a reply, and the time for doing so has passed.

After careful consideration of the record before me, and for the reasons explained below, Defendants' Motion (Doc. No. 51) is GRANTED.[1]

## I. Plaintiff's Amended Complaint

Plaintiff sued Defendants in their official and personal capacities. (Doc. No. 5 at 1-2). He claims Defendants used excessive force against him while he was already restrained in handcuffs. (Id. at 4). As a result, Plaintiff was injured, received stitches in the back of his head, and suffers from seizures. (Id.). Plaintiff seeks damages. (Id. at 5).

## II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment. (Doc. No. 39).

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

**III.     Discussion**

Defendants maintain that there was no violation of Plaintiff's constitutional rights and that they are entitled to qualified immunity. As mentioned above, Plaintiff's official capacity claims have already been dismissed; only Plaintiff's personal capacity claims against Defendants remains pending.

    **1.     Personal Capacity Excessive Force Claims**

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Bare allegations void of factual enhancement are insufficient to state a claim for relief under § 1983. See Iqbal, 556 U.S. at 678.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017). The core judicial inquiry in an excessive force claim is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th

Cir. 2019) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)). An officer acts maliciously when he takes a course of action, without just cause or reason, that was intended to injury the inmate. United States v. Miller, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer behaves sadistically if he acts with "extreme or excessive cruelty or by delighting in cruelty." Id.

In making the inquiry whether an officer acted in good faith to restore or maintain discipline, or if the officer acted maliciously and sadistically to cause harm, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." Jackson, 866 F.3d at 974. Courts may also consider the threat reasonably perceived by the officer, and "any efforts used to diminish the severity of a forceful response." Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008). Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable. Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Rather, guards will be liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" Id. (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Even with malicious and sadistic motivation, not every use of physical force rises to the level of a constitutional violation. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force . . . .'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). But, "any use of force greater than *de minimis*, or any use of force that is

4

'repugnant to the conscience of mankind' does" constitute a violation. Irving, 519 F.3d at 446. There is no significant injury threshold in an excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). However, "[t]he extent of injury may . . . provide some indication of the amount of force applied." (Id.). Threats of death together with readily available means may "form the basis of an injury sufficiently serious to implicate the Eighth Amendment." Irving, 519 F.3d at 449.

2. **Qualified Immunity**

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] "'A clearly established

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at

right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

***

Plaintiff filed a Response to Defendants' Motion. (Doc. No. 57). Plaintiff did not, however, controvert any material fact set forth by Defendants in their statement of undisputed material facts. Instead, Plaintiff said that he did not receive the discovery that he requested from Defendants. (Id. at 1). Plaintiff points to docket entry numbers 27, 29, and 38 in support of his position. (Id.).

Docket entry number 27 is a Notice of Special Circumstances that included, among other things, a request for production of documents on page 15 and Arkansas Freedom of Information Act Requests on pages 16-24. (Doc. No. 27). Docket entry number 29 is a motion for order in which Plaintiff complains that he has not received responses to his Freedom of Information Act

236).

requests to certain individuals who are not parties to this action. (Doc. No. 29). Docket entry number 38 is an Order from the Court denying Plaintiff's Motion to Start Discovery as moot because Plaintiff did not need a court order to before serving discovery requests. (Doc. No. 38 at 2). In this Order, the Court advised Plaintiff that he must mail discovery requests to counsel for the Defendants. (Id.). The Court also referred Plaintiff to the Initial Order for Pro Se Prisoners entered on March 29, 2023, which contained that same information. (Id.).

Plaintiff did not file a Motion to Compel in this case. And Plaintiff did not request that the November 30, 2023 discovery deadline be extended. (See Doc. No. 20, Initial Scheduling Order, entered May 31, 2023). Under these circumstances, the time during which Plaintiff may seek discovery has passed.

### 3. Undisputed Material Facts

As set out above, Plaintiff did not controvert any material fact provided by Defendants. Accordingly, all material facts submitted by Defendants (Doc. No. 52) are deemed admitted. Local Rule 56.1(c); FED. R. CIV. P. 56(e).

During his deposition, Plaintiff testified that the incident giving rise to this case occurred at the EARU Max in Isolation one or Isolation two coming from the control booth. (Doc. No. 52 at ¶ 6). Plaintiff was being moved because of an incident where unit staff wanted him to move to another barracks which Plaintiff did not want to do. (Id. at ¶ 7). As a result, Plaintiff had an altercation with staff. (Id. at ¶ 8). During this time, Plaintiff was cuffed and taken to the infirmary for a pre-lockup report. (Id. at ¶ 9). An Officer Fields walked Plaintiff to the Brickey's Super Max and transferred Plaintiff to the custody of other officers who were in "post" there. (Doc. No. 52 at ¶ 11; Doc. No. 51-1 at 4:24-5:18). Plaintiff believed those officers were Monica Branscomb, Etherly, and Defendant Barden. (Doc. No. 52 at ¶ 11; Doc. No. 51-1 at 5:19-5:21). Plaintiff testified that Etherly and Branscomb then took him to the "dog cage," uncuffed him, and

7

strip searched him.  (Doc. No. 52 at ¶ 12; Doc. No. 51-1 at 5:22-6:14).  The officers left the dog cage; upon their return, Plaintiff says Etherly rubbed his hand down the crack of Plaintiff's butt. (Doc. No. 52 at ¶ 14; Doc. No. 51-1 at 6:14-7:9).  At that point, Plaintiff became combative. (Doc. No. 52 at ¶ 14; Doc. No. 51-1 at 7:5-7:9).

According to Plaintiff, the officers were not wearing name badges.  (Doc. No. 52 at ¶ 15; Doc. No. 51-1 at 7:10-7:17).  Plaintiff described Defendant Barden as a tall wide black man who resembles Shaquille O'Neal and was known the unit as "Bane."  (Doc. No. 52 at ¶ 15; Doc. No. 51-1 at 7:20-8:1).  Defendant Lane was not present at the unit when the alleged excessive force took place; Plaintiff acknowledged that he misidentified Lane, testified that Lane was not part of the incident given rise to this case, and asked for Lane to be removed from this case.  (Doc. No. 52 at ¶¶ 16, 30; Doc. No. 51-1 at 8:2-8:23).

Plaintiff explained that the reason he named Barden as a Defendant was based on a conversation he had with Barden approximately two years later in which Baren referenced that the last time he had seen Plaintiff, Plaintiff was complaining about officer Etherly.  (Doc. No. 52 at ¶ 17; Doc. No. 51-1 at 17:7-17:12).

While Plaintiff was still in the "dog cage," he yelled for staff to let him use the restroom. (Doc. No. 52 at ¶ 18; Doc. No. 51-1 at 10:2-10:3).  Plaintiff says his requests were denied, so he hung his penis through the trap and began urinating.  (Doc. No. 52 at ¶ 18; Doc. No. 51-1 at 10:4-10:7).  Plaintiff said that at that point, officer Etherly accused him of indecent exposure.  (Doc. No. 52 at ¶ 19; Doc. No. 51-1 at 10:7-10:11).

Plaintiff was then removed from the cage, cuffed, and escorted to segregation.  (Doc. No. 52 at ¶ 20).  Plaintiff said that during the escort, he was hit on the back of his head with a walkie-talkie, struck again on the left side of his head, and then struck a third time, causing him to black out.  (Doc. No. 52 at ¶ 21; Doc. No. 51-1 at 11:1-12:9).  Plaintiff believes officers Etherly,

Branscomb, Kenyon, and Barden were present, but is not certain who attacked him because his back was towards them at that time. (Doc. No. 22 at ¶ 22).

Plaintiff testified that he was not certain if it was Defendant Barden who attacked him because Plaintiff did not have the name(s) of the attacker(s). (Doc. No. 52 at ¶ 30; Doc. No. 51-1 at 14:16-14:19). The incident occurred around 1:10 a.m. on May 25, 2021. (Doc. No. 52 at ¶ 53; Doc. No. 51-1 at 3:17-3:21). Defendant Barden arrived at work at 8:00 a.m. on May 25, 2021. (Doc. No. 52 at ¶ 32). Staff who witnessed or were involved with the incident filed Incident Reports. (Id. at ¶ 52). There is no indication that Defendant Barden (or Defendant Lane) were involved in or witnessed the incident. (Id. at ¶ 54).

***

Based on Plaintiff's own admission, Defendant Lane was not involved with the incident. As such, no reasonable jury could find Defendant Lane used excessive force against Plaintiff. Parrish, 594 F.3d at 1001.

Plaintiff was not certain if Defendant Barden attacked him. Time records establish that Defendant Barden was not yet at work with the incident occurred, and Defendant Barden's name does not appear on any incident report. Plaintiff has not contested any of these facts or the underlying records. Under these circumstances, no reasonable jury could find Defendant Barden used excessive force against Plaintiff. Id.

Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants'

Motion for Summary Judgment is granted and Plaintiff's claims against Defendants are dismissed with prejudice.

## IV. Conclusion

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 51) is GRANTED;

2. Plaintiff's claims against Defendants are DISMISSED with prejudice.

3. This case is DISMISSED.

Dated this 18th day of March, 2024.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE